IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JOHN GILLIS,

                Plaintiff,

v.                                                                                                  OPINION and ORDER

ANDREW SAUL,                                                                        20-cv-547-jdp
Commissioner of Social Security,

                Defendant.

---

Plaintiff John Gillis seeks judicial review of a final decision of defendant Andrew Saul, Commissioner of the Social Security Administration, finding him not disabled under the Social Security Act. Gillis's main argument is that administrative law judge (ALJ) Ahavaha Pyrtel wrongly based her evaluation of Gillis's mental abilities on her own review of the medical records without the opinion of a medical expert. But there is no categorical requirement that an ALJ base her findings on the opinion of a medical expert. Here, the state agency consultants were unable to assess Gillis's mental limitations because Gillis had failed to provide necessary information about his activities of daily living. But the ALJ was able to assess Gillis's mental capabilities from witness testimony and Gillis's treatment notes, which described his symptoms and limitations in terms comprehensible to a layperson. The ALJ reasonably accounted for all Gillis's limitations that were supported by the record. The court will affirm the commissioner's decision. The hearing scheduled for April 20, 2021, is canceled.

ANALYSIS

Gillis applied for benefits in 2017, alleging that he was disabled as of January 7, 2017. Gillis's application was denied initially and on reconsideration. Gillis requested a hearing,

which the ALJ held on November 12, 2019. The ALJ found that Gillis suffered from the severe impairments of bipolar disorder, anxiety disorder, alcohol use disorder, and attention deficit hyperactivity disorder. R. 16.[1] She ascribed to Gillis the residual functional capacity (RFC) "to perform a full range of work at all exertional levels" with several specific limitations to address his mental health issues: "[H]e can perform simple, routine, and repetitive tasks but not at a production rate pace (e.g., assembly line work). He can never work with the public and can tolerate few changes in a routine work setting." R. 17. Relying on the testimony of a vocational expert, the ALJ concluded that Gillis was unable to perform any past relevant work but could work as a food-service worker, hospital cleaner, or hand packager, jobs that were sufficiently available in the national economy.

On appeal, the court's role is to determine whether the ALJ's decision is supported by substantial evidence, which means "sufficient evidence to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). This is not a high standard, requiring only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* But the ALJ must "build an accurate and logical bridge" between the evidence and her conclusions. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (internal quotation marks omitted).

A. **Basis for ALJ's restrictions**

Gillis's main argument is that the ALJ erred by basing the restrictions in the RFC on her own review of his medical records instead of on the opinions of medical sources.

---

[1] Record cites are to the administrative transcript. Dkt. 15.

Gillis's mental health records were reviewed by state agency consultants at the initial level, R. 75–84, and on reconsideration, R. 97–107. But Gillis had not provided information about his activities of daily living, despite repeated requests. R. 78–79. The state agency consultants concluded that without information about Gillis's activities of daily living, they lacked sufficient evidence to determine whether he had a medically determinable severe mental impairment. They deemed Gillis to be "not disabled" as a result.

But the ALJ did not simply endorse the conclusion of the state agency consultants that Gillis had failed to show that he was disabled. Rather, the ALJ essentially set the work of the state agency consultants aside, because their reports "are not prior administrative medical findings and are not medical opinions." R. 20. The ALJ conducted her own review of Gillis's psychological and psychiatric history, R. 18–20, and she based the restrictions in the RFC on that review.

Gillis contends that the ALJ erred in deriving Gillis's RFC without expert guidance. He relies on *Green v. Apfel*, 204 F.3d 780, 782 (7th Cir. 2000), which he says holds that "ALJs may not base their decision on their interpretation of the medical evidence," Dkt. 23, at 11. But *Green* did not state any such categorical rule. In *Green*, the court of appeals criticized the ALJ for drawing conclusions from the claimant's medical records that were illogical and beyond the ALJ's expertise. *Id.* at 782. The ALJ is required "to summon a medical expert if that is necessary to provide an informed basis for determining whether the claimant is disabled." *Id.* at 781. But *Green* does not hold that a medical expert is needed in every case. After all, the determination of the RFC is ultimately up to the ALJ alone, not the medical experts. *Thomas v. Colvin*, 745 F.3d 802, 808 (7th Cir. 2014). Even where there are medical opinions in the record, it is up to the ALJ to evaluate them by testing those opinions against the rest of the record evidence. *E.g.*,

3

*Wulz v. Saul*, No. 20-cv-390-wmc, 2021 WL 856880, at *6 (W.D. Wis. Mar. 8, 2021); 20 C.F.R. § 404.1520c(c)(2). Generally, whether the record is adequately developed is a matter within the ALJ's discretion. *Thomas*, 745 F.3d at 808. And that principle applies with particular force when the absence of medical opinions was the result of Gillis's own failure to provide information that was repeatedly requested by the state agency consultants.

An ALJ is entitled to use common sense to evaluate evidence that is within the reach of a layperson to understand. *Callaway v. Saul*, No. 19-cv-818-jdp, 2020 WL 2214385, *2 (W.D. Wis. May 7, 2020). Here, Gillis's mental health records were not so complex that the ALJ could not evaluate them as a layperson. Gillis's treatment notes were plainly written with minimal jargon, and the ALJ's summary of them was clear and concise. R. 18–20. The treatment notes showed marked improvement between 2017, when he was struggling with addiction, and 2019, when he testified at his hearing that he had been sober for one year. But Gillis had a number of enduring psychological problems stemming from severe anxiety, which the ALJ identified and accounted for in the RFC.

Gillis identifies nothing in these records that requires medical expertise to understand. The ALJ didn't "play doctor" in evaluating these records; she used common sense to review the evidence in the record of Gillis's psychological problems. The ALJ's failure to commission further expert opinions does not require remand.

The court turns now to Gillis's secondary arguments.

B. **Explanation for mental restrictions**

Gillis contends that the ALJ failed to explain the evidentiary basis for the mental restrictions in the RFC. But the ALJ expressly explained the basis for each of these restrictions. She said that she limited Gillis to jobs without any public interaction because of his "moderate

4

limitations in social interactions, related to his reported irritability and increased stress in public situations." R. 20. She said that she limited Gillis "to jobs that are simple, routine, and repetitive and do not require production rate pace work" because of his "moderate limitations in concentration, persistence, or pace, related largely to distractions from ADHD and anxiety." R. 20–21. And she explained that she limited Gillis to work with "few changes in a routine work setting" to accommodate his "poor, but improving, coping skills." R. 21. Gillis doesn't identify any evidence that calls these explanations into question.

Gillis cites other evidence that he contends would support further limitations. He says that he suffered panic attacks while working at Menards and McDonald's when he had to wear a headset, which required him to communicate with customers while simultaneously receiving directions from his managers. He says that he sometimes becomes overwhelmed by anxiety while grocery shopping. He says he suffers from "anxiety and isolation, psychomotor abnormalities, such as rocking quickly in his chair, fluctuating thought process, racing thoughts, poor coping skills, and poor impulse control." Dkt. 23, at 11. But the ALJ expressly considered this evidence in her review of Gillis's mental impairments and his medical history. *See* R. 16–20. And the ALJ imposed significant work restrictions to address these manifestations of anxiety: the ALJ limited him to no interactions with the public and to simple, routine, repetitive tasks with few changes. Gillis doesn't explain why these restrictions were inadequate. Gillis essentially asks the court to reweigh the evidence that the ALJ considered, which isn't the court's role. *Peeters v. Saul*, 975 F.3d 639, 641 (7th Cir. 2020).

## C. Analysis of mental impairments

Gillis also contends that the ALJ was required "to conduct a function-by-function analysis" of his mental impairments under 20 C.F.R. § 404.1520a, citing Social Security Ruling

5

96-8P, 1996 WL 374184 (July 2, 1996). But an ALJ's decision lacking such an analysis "does not necessarily require remand." *Jeske v. Saul*, 955 F.3d 583, 596 (7th Cir. 2020). If the ALJ's opinion shows that she considered each of the functions outlined in the regulation, remand isn't required even if the ALJ didn't explicitly address each function. *Id.* Gillis doesn't respond to the commissioner's argument on this point in his reply brief, nor does he identify any function that the ALJ failed to consider, so he has forfeited the point.

ORDER

IT IS ORDERED that plaintiff John Gillis's motion for summary judgment, Dkt. 22, is DENIED and the administrative decision is AFFIRMED. The clerk of court is directed to enter judgment in favor of the defendant and close this case. The hearing scheduled for April 20, 2021, is CANCELED.

Entered April 16, 2021.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge